UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. ED CV 18-1364-SP <br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On June 26, 2018, plaintiff William M. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") erred at step two; (2) whether the ALJ properly considered the opinion of a treating physician; and (3) whether the ALJ properly

considered the opinion of a medical expert. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-22; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-7.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of the treating physician, but the ALJ erred at step two and erred in considering the medical expert's opinion. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated herein.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 59 years old on the alleged disability onset date, has a law degree. AR at 48, 101. Plaintiff has past relevant work as a lawyer. *Id*. at 58.

On January 21, 2014, plaintiff filed an application for a period of disability and DIB, alleging an onset date of January 15, 2013 due to toxic encephalopathy, arthritis, neuropathy, and gluten sensitivity. *Id*. at 101. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id*. at 125-28, 133-37.

On August 4, 2016, plaintiff appeared without counsel and testified at a hearing before the ALJ. *Id*. at 42-70. The ALJ also heard testimony from Sonya Peterson, a vocational expert. *Id*. at 58-61. The ALJ held a supplemental hearing on March 9, 2017, at which plaintiff, then represented by counsel, appeared and testified. *Id*. at 71-100. The ALJ also heard testimony from Dr. John David Sabow, a medical expert. *Id* at 78-98. On April 5, 2017, the ALJ denied plaintiff's claim for benefits. *Id*. at 22-35.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity

since January 15, 2013, the alleged disability onset date. *Id*. at 24.

At step two, the ALJ found plaintiff suffered from the following severe impairments: brain atrophy secondary to multiple chemical sensitivity and encephalopathy; degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; and osteoarthritis of the bilateral knees. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 29.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined he had the RFC to perform a medium work with the limitations that plaintiff could: lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; stand and walk for six hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, or scaffolds. *Id*. at 30. The ALJ prohibited plaintiff from concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. *Id*.

The ALJ found, at step four, that plaintiff was capable of performing his past relevant work as a lawyer.[2] *Id*. at 35. Consequently, the ALJ concluded plaintiff

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[2] The ALJ's decision contains a typographical error. Despite clearly stating plaintiff is capable of performing his past relevant work and finding him not disabled, the ALJ wrote "[i]n comparing the claimant's [RFC] with the physical and mental demands of the claimant's past relevant work, . . . , the undersigned has

did not suffer from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

---

determined the claimant is *not* able to perform this past relevant work as actually or generally performed." AR at 35 (emphasis added).

4

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

### A.     **The ALJ Erred at Step Two**

Plaintiff argues the ALJ erred at step two. P. Mem. at 4-12. Specifically, plaintiff contends the ALJ's finding that he did not suffer from a severe mental impairment was inconsistent with the record as a whole. *Id.*

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii).[3] "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

With regard to mental impairments, the regulations provide a "special technique" to evaluate their severity. 20 C.F.R. § 404.1520a(a). An ALJ first evaluates the medical evidence to determine whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1520a(b)(1). The ALJ then rates the degree of functional limitations in four functional areas – activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(1)-(3). For the first three functional areas, the ALJ uses a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the degree of limitations as none or mild in the first three functional areas and finds no episodes in the fourth, she or he will generally conclude the impairment is not severe unless the evidence indicates

---

[3]     All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

there is more than a minimal limitation in claimant's ability to do work. 20 C.F.R. § 404.1520(a)(d)(1). A finding of only mild functional limitations generally results in the conclusion that the claimant does not suffer from a severe mental impairment. *See* 20 C.F.R. § 404.1520a(d)(1). But "[m]oderate limitations are sufficient to meet the 'severe impairment' standard." *Holloway v. Berryhill*, 2017 WL 5508512, at *2 (C.D. Cal. Nov. 16, 2017); *see, e.g., Cambaliza v. Colvin*, 2014 WL 2009105, at *1 (C.D. Cal. May 15, 2014) (the regulations direct an ALJ to find a mental impairment severe when a claimant has moderate functional limitations); *Vargas v. Astrue*, 2010 WL 3418890, at *6 (C.D. Cal. Aug. 25, 2010) (findings of moderate limitations may amount to more than a minimal effect on a plaintiff's ability to perform basic work activities); *but see Koehler v. Astrue*, 283 Fed. Appx. 443, 445 (9th Cir. 2008) (noting that the regulations do not mandate that a diagnosis of a moderate limitation in the ability to respond to changes in the workplace must result in a finding of a severe mental impairment).

Here, the ALJ determined plaintiff's mental impairments caused mild limitations in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.[4] AR at 26. In reaching this conclusion, the ALJ considered the medical evidence, gave great weight to the opinions of the State Agency physicians, and gave little weight to the opinions of Dr. Gunnar Heuser, nurse Sandra Bell, and Dr. Arsalan Darmal. *Id*. at 26-29.

The ALJ's finding that plaintiff had only mild limitations in social functioning is inconsistent with the record as a whole. The ALJ correctly noted

---

[4] The ALJ here considered the four functional areas in Listing 12.00C. Although the ALJ did not discuss activities of daily living in this section, later in the decision he found plaintiff had no impairments in his activities of daily living. AR at 31. The ALJ also did not make a finding with regard to episodes of decompensation but the record does not reflect any episodes.

plaintiff was often reported to be cooperative, had good eye contact, linear thought content, and normal speech at many of his mental status examinations. *See, e.g., id.* at 952, 1139, 1437, 1477. But the record is replete with examples of difficult and hostile behavior, whether in person, over the telephone, or over e-mail communications. *See, e.g., id.* at 1289-90, 1417-18, 1507, 1533-34, 1895. Given the frequency and degree of hostility, the record does not support the ALJ's finding that plaintiff only had mild limitations interacting with others.

Although the Ninth Circuit, in an unpublished case, has found the regulations do not mandate that a finding of a moderate limitation in one functional area must result in a finding of a severe mental impairment (*see Koehler*, 283 Fed. Appx. at 445), the courts have generally interpreted the regulations to direct a finding of a severe impairment when a claimant has moderate limitations, as set forth above. And indeed, the ALJ here determined plaintiff did not have a severe mental impairment, not by finding a moderate limitation in social functioning to be inconsequential, but by concluding plaintiff had no more than minimal or mild limitations in any area. *See* AR at 26. As discussion, this was not supported by substantial evidence in the record as a whole. Consequently, the ALJ erred at step two.

A step two severity finding is a de minimis screening device and does not necessarily result in functional limitations. *See Lopez v. Astrue*, 2011 WL 3206958, at *6 (N.D. Cal. Jul. 27, 2011) ("[A] severe mental health impairment does not necessarily mean a severe limitation."); *Brave v. Colvin*, 2013 WL 6490805, at *4 (W.D. Wash. Dec. 10, 2013) ([E]ven impairments deemed severe, do not, as a matter of course, necessarily result in RFC limitations."); *see also Bray v. Comm'r*, 554 F.3d 1219, 1228-29 (9th Cir. 2009) (plaintiff offered no authority to support his argument that a step two severe mental impairment finding must correspond to limitations to on his ability to perform work activities). And in

many instances, error at step two is harmless where, as here, the ALJ found the claimant suffered from other severe impairments. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ at step two was harmless because the step was resolved in plaintiff's favor). This is particularly true where it is apparent that in assessing the RFC the ALJ properly considered the impairments that were erroneously found not severe. *See* Social Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

Here, plaintiff's RFC as determined by the ALJ included no limitations related to mental impairments. AR at 30. The ALJ indicated plaintiff's complaints regarding mental limitations were considered, as was evidence of cognitive issues, but there is no indication the ALJ considered the evidence of plaintiff's social functioning limitations in determining plaintiff's RFC. *Id.* at 31-33. Defendant argues the ALJ's discussion at step two is adequate to show no mental limitations were warranted in plaintiff's RFC (D. Mem. at 6), but again, that discussion fails to account for the evidence of limitations in social functioning. As such, the court cannot say the error at step two was harmless.

In sum, the ALJ erred at step two when he found plaintiff did not suffer from a severe mental impairment. The ALJ's finding that plaintiff only had mild limitations in social functioning was inconsistent with the medical record, and this error was not harmless.

**B.   The ALJ Properly Considered Dr. Heuser's Opinion**

Plaintiff contends the ALJ failed to properly consider the opinion of treating physician Dr. Gunnar Heuser. P. Mem. at 12-18. Specifically, plaintiff argues the ALJ's reasons for discounting Dr. Heuser's opinion were not specific and legitimate and supported by substantial evidence. *Id.*

In determining whether a claimant has a medically determinable impairment,

among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) ; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

Dr. Heuser, an internist, treated plaintiff from mid-November 2002 through the end of 2003. *See* AR at 1025, 1029, 1034. Sometime after Dr. Heuser's treating relationship ended in 2003, he disposed of plaintiff's medical records.

Although Dr. Heuser stated he started examining plaintiff again in 2013, he did not specify the frequency of the treatment or provide any treatment notes. *See id*. at 1027. Dr. Heuser submitted two letter opinions, dated July 28, 2014 and August 24, 2015, and a medical source statement, dated October 20, 2016, from all of which it appears he may have examined plaintiff on two or three occasions.[5] *See id*. at 1029, 2866-67; *see generally id*. at 1025-38, 1225-34, 2866-67.

In the July 2017 letter, Dr. Heuser summarized plaintiff's history and treatment history, and explained how he reached his diagnosis. *Id*. at 1025-38. In 2002, based on plaintiff's reported symptoms and history, SPECT (single photon emission computerized tomography) scans, and bloodwork, Dr. Heuser diagnosed plaintiff with multiple chemical sensitivity ("MCS") and toxic encephalopathy, and treated him with hyperbaric oxygen therapy.[6] *Id*. at 1026, 1029. In 2013, based on additional SPECT scans, plaintiff's reported symptoms, his girlfriend's statements about plaintiff's volatility, and a review of plaintiff's medical records, Dr. Heuser diagnosed plaintiff with multiple chemical sensitivity, toxic encephalopathy, recurrent depression, sleep apnea with insomnia, and history of multiple significant allergens, and opined plaintiff had significant cognitive dysfunction and met Listing 12.02, Organic Mental Disorder. *Id*. at 1033-36.

In the August 2015 letter, Dr. Heuser explained why he disagreed with the War Related Injury and Illness Study Center's ("WRIISC") diagnosis of frontotemporal dementia. *See id*. at 1225-34. Dr. Heuser noted that Dr. John W. Ashford, head of WRIISC, advised plaintiff to avoid swimming in chlorinated

---

[5] Given the fact plaintiff's treating relationship ended ten years prior to Dr. Heuser's next examination and the lack of evidence of a new treating relationship, Dr. Heuser may be more properly characterized as an examining physician.

[6] By 2013, Dr. Heuser was no longer in possession of plaintiff's earlier medical files and relied on his memory, the documents plaintiff possessed, and plaintiff's reports to reconstruct his 2002 and 2003 conclusions. *See* AR at 1029.

10

pools and avoid forest fires, which was an acknowledgment plaintiff suffered from MCS. *See id*. at 1229.

Dr. Heuser submitted a medical source statement, dated October 20, 2016, in which he opined plaintiff had all moderate and marked mental limitations. *Id*. at 2866-67. Dr. Heuser stated plaintiff's behavioral deficits were not present in 2002 and 2003 and are typical of frontal and temporal lobe deterioration, which had originally been diagnosed by WRIISC. *Id*. at 2867. Dr. Heuser therefore impliedly retracted his August 2015 dismissal of WRIISC's diagnosis.

The ALJ provided eight reasons for giving little weight to Dr. Heuser's opinion: (1) it failed to reference sufficient medically acceptable objective clinical or diagnostic findings to support the opinion; (2) the opinion appeared to have been largely based on plaintiff's subjective complaints; (3) the assessment of plaintiff's mental health symptoms was inconsistent with the objective medical evidence; (4) the opinion was inconsistent with cognitive testing; (5) the opinion was inconsistent with the medical expert's opinion; (6) the opinion was inconsistent with the objective evidence; (7) the opinion was inconsistent with evidence of plaintiff's high cognitive functioning; and (8) the opinion was inconsistent with plaintiff's activities of daily living. *Id*. at 27. Most of the reasons are specific and legitimate.

The ALJ's first and sixth reasons for discounting Dr. Heuser's opinion were because it was not supported by sufficiently acceptable objective clinical or diagnostic findings and actually inconsistent with the objective evidence in the record. *Id*.; *see Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). Dr. Heuser's diagnosis relies heavily on SPECT scans, but brain imaging for psychiatric diagnosis is an

unproven test.[7] *See id.* at 1025-38, 1225-34. Dr. Heuser also relied on "specialized blood work" but never explained what blood work was done. *See id.* at 1029. Nor did Dr. Heuser provide the results of the SPECT scans and blood work for other physicians to review. As such, the results of such scans and tests were not sufficient to support Dr. Heuser's diagnosis.

Plaintiff argues that this reason was not legitimate because the ALJ found plaintiff suffered from MCS and encephalopathy, just as Dr. Heuser diagnosed. P. Mem. at 13. But the ALJ found plaintiff suffered from encephalopathy, and not toxic encephalopathy as Dr. Heuser opined. Encephalopathy is a general term for disease of the brain. Further, the ALJ did not necessarily rely on Dr. Heuser's opinion to find plaintiff suffered those impairments. The July 2014 MRI reflected mild diffuse volume loss and the April 2016 MRI indicated mild generalized parenchymal volume loss. *See* AR at 1057-58, 1931. Dr. Ashford of the WRIISC advised plaintiff to avoid chemicals and forest fires, which as Dr. Heuser pointed out, acknowledged MCS. *See id.* at 1229. Thus, the fact that the ALJ found plaintiff suffered from these severe impairments does not mean he had to have given weight to Dr. Heuser's diagnosis. The objective evidence in the record supported the ALJ's step two findings as to these impairments.

The ALJ's second reason for discounting Dr. Heuser's opinion was it was based largely on plaintiff's subjective complaints. An ALJ may reject medical opinions based on a claimant's subjective complaints where his credibility has been properly discounted. *Schultz v. Astrue*, 362 Fed. Appx. 634, 636 (9th Cir. 2010); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ found plaintiff's testimony to not be entirely credible and plaintiff did not dispute

---

[7] *See* https://journalofethics.ama-assn.org/article/diagnostic-brain-imaging-psychiatry-current-uses-and-future-prospects/2012-06 and
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3597411/

this finding. *See* AR at 31-34.

The ALJ's third reason for giving little weight to Dr. Heuser's opinion was that his assessment of plaintiff's symptoms was inconsistent with the objective evidence. *Id*. at 27. Here, the ALJ cited the frequent normal mental status examination findings, including normal grooming and appearance, cooperative normal speech, good eye contact, and linear thought process. *See, e.g., id*. at 952, 1139, 1437, 1477. The ALJ correctly noted these clinical findings were inconsistent with Dr. Heuser's opinion that plaintiff had all marked and moderate limitations. Nevertheless, there were also findings of social functioning limitations and impaired or inconsistent memory, which may support some of the limitations. *See, e.g., id.* at 1143, 1289-90, 1417-18, 1507.

In reasons four and seven, the ALJ discounted Dr. Heuser's opinion plaintiff suffered from significant cognitive dysfunction because it was inconsistent with cognitive testing and plaintiff's high cognitive functioning. *See id*. at 27. Specifically, the ALJ noted plaintiff had a high IQ score, average attention score, high average concentration score, average memory score, and was able to write a letter to his attorney which clearly reflected high cognitive abilities. *See id.*; *see also id*. at 953-54, 1509-12, 2868-72. The ALJ's reasons were supported by the record.

The ALJ's fifth reason for giving little weight to Dr. Heuser's opinion was it was inconsistent with the medical expert's opinion. *Id*. at 27; *see Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (the opinions of a non-examining physician "may [] serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). Dr. Sabow testified that he did not feel plaintiff required any mental functional limitations based on the record he reviewed. *See* AR at 86-87. Dr. Sabow opined the imaging did not show organic brain damage or fronto-temporal dementia and plaintiff's

13

letter reflected superior cognitive abilities. *See id.* Nonetheless, the ALJ expressly gave little weight to Dr. Sabow's opinion. *See id*. at 34. Thus, it appears this reason to discount Dr. Heuser's opinion was not specific and legitimate. It may well be that the ALJ only discounted Dr. Sabow's opinion concerning plaintiff's physical RFC and not his opinion concerning plaintiff's mental RFC, but absent greater clarity on this point, the ALJ's reason was not specific and legitimate. *See id*.

Finally, the ALJ discounted Dr. Heuser's opinion because it was inconsistent with plaintiff's activities of daily living. *See id*. at 27. As the ALJ noted, plaintiff was able to perform all activities of living without difficulty. *See id*. at 31. Some of these activities included social interactions necessary for obtaining and maintaining employment. *See id.* In addition, plaintiff was able to travel and surf. None of these activities indicate plaintiff was as limited as Dr. Heuser opined.

In short, the ALJ provided multiple specific and legitimate reasons supported by substantial evidence for discounting Dr. Heuser's opinion.

## C. **The ALJ Failed to Properly Consider Dr. Sabow's Opinion**

Plaintiff argues the ALJ failed to properly consider Dr. Sabow's opinion. P. Mem. at 18-22. Specifically, plaintiff contends the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Sabow's opinion that plaintiff was capable of performing light work. *Id*.; *see also* AR at 92.

At the hearing, Dr. Sabow began his testimony by opining that plaintiff did not meet any Listing. AR at 85-86. When asked about plaintiff's RFC, he said he saw "no impact on any residual functional capacity." *Id.* at 86. But then he elaborated by expressing his disagreement with Dr. Heuser over plaintiff's mental limitations, and did not address plaintiff's physical limitations until prompted. *Id.* at 86-87. In particular, when questioned by plaintiff's counsel as to whether plaintiff could lift 100 pounds, Dr. Sabow testified that would be inadvisable

because it would aggravate his degenerative cervical arthritis. *Id.* at 91. When asked whether it would be advisable for plaintiff to lift 50 pounds, Dr. Sabow said that given plaintiff's neck and back problems, he would advise against plaintiff even lifting 50 pounds up to a third of the workday. *Id.* at 91-92. Dr. Sabow testified plaintiff could perform light work. *Id.* at 92.

The ALJ gave little weight to Dr. Sabow's opinion, finding it was vague and internally inconsistent because Dr. Sabow "simultaneously opined that the claimant had no limitations, should be limited to medium work, and should be limited to light work." *Id.* at 34. This is not a fair characterization of the testimony. Dr. Sabow never opined plaintiff could perform medium work; he simply answered counsel's questions as they were asked, ultimately concluding plaintiff could perform light work. It is true that Dr. Sabow did initially testify plaintiff had no RFC limitations, but in context this testimony seemed to be solely addressing plaintiff's mental RFC. Although the progress of Dr. Sabow's testimony was not as clear as it might have been, he ultimately clearly opined that plaintiff should be limited to light work. Accordingly, the ALJ's rejection of this opinion as vague and internally inconsistent was not legitimate.

The ALJ also rejected Dr. Sabow's opinion, to the extent it was inconsistent with the RFC determined by the ALJ, as inconsistent with the diagnostic evidence. *Id.* In particular, he notes MRIs of the cervical and lumbar spines show only mild to moderate degenerative disc disease. *Id.*; *see id.* at 1092, 1927. But significantly, Dr. Sabow did not testify plaintiff would be unable to lift 50 pounds occasionally; he testified that it would be inadvisable because it could aggravate plaintiff's degenerative spine conditions. It is not apparent how the MRIs showing mild to moderate degenerative disc disease undermine this opinion. Accordingly, the ALJ failed to provide specific and legitimate reasons to discount Dr. Sabow's opinion. In the context of the remainder of the ALJ's RFC determination, this

15

error was harmless. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."). Dr. Sabow opined plaintiff could perform light work. The ALJ determined plaintiff could perform his past relevant work as a lawyer, which is categorized as sedentary work. *See* Dictionary of Occupational Titles Code 110.107-010. Thus, even if the ALJ had adopted Dr. Sabow's RFC determination, the RFC would not have affected the ALJ's disability finding here.

But as discussed above, the ALJ also erred at step two, and failed to take plaintiff's social functioning limitations into account in determining plaintiff's RFC. As plaintiff argues, an RFC limited to light work with certain mental limitations, even if mild, could alter the disability determination. *See* P. Mem. at 20-22; SSR 96-8p ("in combination with limitations imposed by an individual's other impairment, the limitations due to [] a 'not severe' impairment may prevent an individual from performing past relevant work"). Accordingly, the court cannot say the ALJ's rejection of Dr. Sabow's opinion was harmless.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with

instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to resolve outstanding issues. On remand, the ALJ shall reconsider the medical opinions and evidence, and reconsider the step two determinations. The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 30, 2019

_____
SHERI PYM
United States Magistrate Judge